J-A29033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DR. AHLAM KHALIL, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| TRAVELERS INDEMNITY COMPANY OF | : | |
| AMERICA, WENTWORTH PROPERTY | : | |
| MANAGEMENT CORP, ITS EMPLOYEES, | : | |
| AGENTS, GLENN M. CAMPBELL, | : | |
| ESQUIRE, WILLIAM J. FERREN & | ; | |
| ASSOCIATES, FIRSTSERVICE | : | |
| RESIDENTIAL, ITS AGENTS, | : | |
| EMPLOYEES, REPRESENTATIVES, PIER 3 | : | |
| CONDOMINIUM ASSOCIATION, ITS | : | |
| BOARD, AGENTS, EMPLOYEES, | : | |
| WENTWORTH PROPERTY MANAGEMENT | : | |
| CORPORATION, ITS AGENTS, | : | |
| EMPLOYEES, TRAVELERS PROPERTY | : | |
| CASUALTY COMPANY OF AMERICA, | : | |
| TRAVELERS INDEMNITY COMPANY | : | |
| (IND), TRAVELERS INDEMNITY | : | |
| COMPANY OF CONNECTICUT (TCT), | : | |
| TRAVELERS CASUALTY INSURANCE | : | |
| COMPANY OF AMERICA (ACJ), | : | |
| STANDARD FIRE OF INSURANCE | : | |
| COMPANY, MONICA E. O'NEILL, | : | |
| ESQUIRE, THOMAS THOMAS & HAFER, | : | |
| | : | |
| Appellees | : | No. 1290 EDA 2017 |

Appeal from the Order Entered March 22, 2017,
in the Court of Common Pleas of Philadelphia County,
Civil Division at No(s): April Term, 2014 No. 01925

BEFORE: LAZARUS, PLATT,* and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED JANUARY 31, 2018**

---

* Retired Senior Judge assigned to the Superior Court.

Dr. Ahlam Khalil appeals from the order entered on March 22, 2017, which granted the motion to enforce settlement filed by Travelers Property Casualty Insurance Company of America (Travelers). Upon review, we reverse.

We provide a brief summary of the complicated factual and procedural history of this matter. On May 25, 2007, Khalil's condominium sustained water damage from a leak in an adjacent condominium owned by Jason and Anne Marie Diegidio (the Diegidios). On July 16, 2008, Khalil filed a complaint against the Diegidios and two insurance companies, Travelers and State Farm (***Khalil I***).

While that litigation was pending, in 2009, Pier 3 Condominium Association (Pier 3) filed a complaint against Khalil for outstanding fees she purportedly owed to Pier 3 while she was unable to inhabit her condominium after the flood (***Khalil II***). Khalil filed a counterclaim against Pier 3, as well as a joinder complaint against the Diegidios and Wentworth Property Management (Wentworth), the property management company responsible for maintenance.

Subsequently, on May 12, 2011, Khalil signed a release with Travelers in ***Khalil I***. During trial, on May 20, 2011, Khalil settled her claims against the Diegidios and State Farm in that matter. However, Khalil refused to accept

- 2 -

any payments pursuant to the settlement agreements, and on October 11, 2011, the trial court issued an order finding the settlements to be valid.[1]

Based on these settlement agreements, Pier 3 and Wentworth moved to dismiss Khalil's counterclaims in **Khalil II**. On July 12, 2012, the trial court entered an order granting these motions. The case proceeded to jury trial and on July 19, 2012, the jury returned a verdict in favor of Pier 3 and against Khalil for $109,000. Khalil filed post-trial motions and a notice of appeal. On July 9, 2015, the Commonwealth Court affirmed the judgment against Khalil and in favor of Pier 3. **See Pier 3 Condominium Assoc. v. Khalil**, 118 A.3d 495 (Pa. Cmwlth. 2015) (unpublished memorandum).

Meanwhile, on April 17, 2014, Khalil filed a praecipe for writ of summons in the instant matter. The case was deferred pending mediation and resolution of prior cases. These settlement negotiations produced the document (Term Sheet) that is at issue in this case. Specifically, on October 1, 2014, Khalil and Travelers signed the Term Sheet that included the following language.

> 1. Global resolution of all claims arising out of or directly or indirectly relating to the May 25, 2007 water damage event at the Pier 3 Condominium (the "Event")….
>
> ***
>
> 13. In addition to agreement on all of the terms set forth herein, the settlement and the payments by Travelers Property as set forth above are conditioned upon:

---

[1] For a more detailed history of **Khalil I**, see **Khalil v. Diegidio**, 102 A.3d 527 (Pa. Super. 2014) (unpublished memorandum).

(a)  The parties reaching agreement on the terms of a final written settlement agreement…

Khalil's Brief, at Exhibit A.

According to Travelers, "[f]ollowing the execution of the Term Sheet at the October 1, 2014, mediation, Dr. Khalil, Travelers Property and their respective counsel began working on the language of an even more formalized document reflecting the global settlement agreement reached at the October 1, 2014, mediation as set forth in the Term Sheet." Travelers' Brief at 6-7. Negotiations continued between Khalil and Travelers, but they "were unable to decide on language of a formal written settlement document." *Id*. at 8.

On February 2, 2016, Khalil filed the complaint in this case, which set forth numerous counts against all defendants related to her position that she was fraudulently induced to settle and discontinue her prior actions by these defendants.  On December 13, 2016, Travelers filed a motion to enforce settlement, arguing that the Term Sheet was a global settlement agreement that governed the outcome in the instant matter. On March 22, 2017, the trial court granted the motion.  Khalil timely filed a notice of appeal, and both Khalil and the trial court complied with Pa.R.A.P. 1925.

On appeal, Khalil sets forth two questions for our review.

1. Whether the trial court erred as a matter of law in holding that a term sheet was an enforceable "global settlement agreement" where its unambiguous language reveals an intent not to be bound and the parties did not, and could not, satisfy the term sheet's material and unambiguous conditions precedent, including "reaching agreement on the terms of a

final written settlement agreement" and obtaining releases from third parties[.]

2. Whether the trial court erred as a matter of law in failing to hold an evidentiary hearing to determine whether the Term Sheet was an enforceable "global settlement agreement" or merely an unenforceable "agreement to agree."

Khalil's Brief at 5 (trial court answers omitted).

In reviewing these issues, we bear in mind the following principles.

In beginning our analysis, we note settlement agreements are governed by contract law principles. ***Mazzella v. Koken***, [] 739 A.2d 531, 536 ([Pa.] 1999).

[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence. Hence, where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended.

***Steuart v. McChesney***, 444 A.2d 659, 661 ([Pa.] 1982) (citation and internal quotations omitted) (emphasis in original). The meaning of an unambiguous contract presents a question of law for which our review is *de novo*. The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself. [I]n determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect.... [This Court] will not interpret one provision of a contract in a manner which results in another portion being annulled. [A]n act or event designated in a contract will not be construed as a condition unless that clearly appears to be the intention of the parties.

***Lesko v. Frankford Hosp.-Bucks Cty.***, 15 A.3d 337, 341-42 (Pa. 2011)

(some internal citations and quotation marks omitted).

Here, the trial court concluded that Travelers would pay Khalil a certain sum to settle "all claims arising out of or directly or indirectly relating to the May 25, 2007, water damage even[t] at Pier 3 Condominium." Trial Court Opinion, 6/29/2017, at 4 (internal quotation marks omitted). Although the trial court recognized that certain conditions, including, "[a]greement to a final written settlement" had to be met, it concluded nevertheless that an agreement was reached. *Id*.

Khalil argues the following in support of her position that the Term Sheet was not a final settlement agreement: "The unambiguous language of the Term Sheet reveals that there was no 'meeting of the minds' and no intent to be bound. The Term Sheet was not a binding 'global settlement agreement' but only an unenforceable 'agreement to agree.'" Khalil's Brief at 25-26. Travelers responds that the aforementioned "Term Sheet is an enforceable agreement to settle the parties' disputes." Travelers' Brief at 10. Travelers argues that the Term Sheet meets the "essential terms of an agreement to settle their disputes – an exchange of a sum certain for a release (and other consideration)." *Id*. at 13.

In reviewing the unambiguous language of the Term Sheet, we agree with Khalil that the Term Sheet was conditioned upon the "[t]he parties reaching agreement on the terms of a final written settlement agreement." Khalil's Brief, at Exhibit A. Thus, it is clear from the writing itself that no final agreement had been reached. Accordingly, we hold the trial court erred in

concluding that the Term Sheet was an enforceable contract, and reverse the order of the trial court.[2]

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/18

---

[2] Because we have concluded that the Term Sheet was unambiguous and clear that no final settlement agreement had been reached, we need not address Khalil's second issue concerning whether she was entitled to a hearing on this issue.